## J. I. CASE COMPANY, ET AL.

### V.

## UNITED VIRGINIA BANK, ET AL.

Record No. 830981

October 10, 1986

Present: All the Justices

*Sidney H. Kirstein (McRorie, Kirstein & McMahon*, on briefs), for appellants.

*Bevin R. Alexander, Jr.; Richard W. Elliott (Raynor V. Snead, Jr.; Edmunds & Williams*, on briefs), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this detinue action, joint plaintiffs exercised their prerogative to take a nonsuit. On appeal, the main issue is whether the trial court erred in awarding a money judgment against the plaintiffs for the value of property seized in the detinue proceeding and disposed of by the plaintiffs prior to nonsuit, without notice to the defendants or approval of the trial court.

In July 1982, appellants J. I. Case Company and J. I. Case Credit Corporation (collectively, Case) filed a motion for judgment in detinue against appellees United Virginia Bank and Trent Equipment Company, Inc. Case alleged it had "supplied, furnished, financed and/or floor-planned the acquisition of certain industrial utility equipment, parts and supplies" to Trent, a corporation engaged in the business of selling such items. Case further alleged it had "secured the sales of all Case equipment" by a financing statement filed in 1966 in the Clerk's office of the court below.

Case also alleged that United Virginia Bank "recently" obtained a security interest in all Trent inventory, "presumably to

include Case equipment," by virtue of a financing statement filed in 1981 in the Clerk's office below. Case claimed that Trent was in default of its obligations to Case, that Case's lien on the equipment was superior to the Bank's, that the Bank had seized all Case equipment and had sold some of the equipment, and that the Bank "threatens to sell the remaining Case equipment."

Case asserted it was entitled to immediate possession of all Case equipment held by the defendants by virtue of the security agreement and timely filed continuation statements. Case asked the court to direct the sheriff to deliver all the property to Case, to declare the rights of the parties to the property in question, to declare that Case was entitled to a first lien on the property, to issue an injunction requiring the defendants to account for all the Case property, to order transfer of the property or the proceeds to Case, and to award Case damages for the wrongful detention or liquidation of its collateral.

Attached to the motion for judgment was an affidavit executed by a Case employee listing the "kind, quantity and value of the Case equipment as to which plaintiff seeks possession." The total value was listed as $187,537.50.

Case filed with the motion for judgment a bond, required by Code § 8.01-115, in the penalty of $500,000. The bond provided that the obligation would be void unless the right of possession ultimately was judged against Case. Under such circumstances, Case or its surety was obligated (1) to pay all costs and any judgment ultimately awarded the defendants for damages which may accrue by reason of the seizure of the Case equipment and (2) to "redeliver the said property to the defendants from whose possession it was taken." The sheriff immediately seized property listed on the affidavit and delivered it to Case pendente lite. *See* Code § 8.01-114(A).

In responsive pleadings, the Bank denied Case had a valid security interest in the equipment. The Bank also asserted it had a security interest in the property superior to Case and that the Bank had properly sold some of the equipment, which had been in possession of its debtor, Trent.

Trent responded to the motion for judgment by asserting that Case had removed certain equipment from Trent's property in violation of agreements between Case and Trent for the acquisition of equipment. Trent also alleged that the equipment seized by

Case was "of a value substantially more than the current amount owed" to Case by Trent.

Following discovery proceedings, the trial court, sitting without a jury, held a hearing on January 4, 1983. Case presented testimony concerning its security interest, the identity of equipment seized by the sheriff, and value of the equipment. Neither defendant presented evidence on value, assuming another hearing would be held to address that issue.

At the hearing, the defendants and the court learned for the first time that Case had removed the seized equipment from Campbell County. The property had been distributed among Case's retail dealers throughout the United States. It had been disposed of without notice to the defendants and without court authorization.

Before the hearing, the defendants filed motions for summary judgment. During the hearing, defendants moved to strike Case's evidence. The trial court took these motions under advisement and asked counsel to file memoranda of law.

Two days later, January 6, Case filed a written motion for a voluntary nonsuit pursuant to Code § 8.01-380 (a party shall be allowed to suffer a nonsuit as to any cause of action or claim if "he does so before a motion to strike the evidence has been sustained or before the jury retires from the bar or before the action has been submitted to the court for decision"). The Bank then filed an objection to the nonsuit motion and a "Motion for Damage Award." Among other things, the Bank asserted that if the nonsuit were allowed, the seized property "should be returned to the defendant or its value paid to the defendant, along with damages, costs and fees." Trent filed a similar objection and motion.

After the parties had submitted memoranda of law on the nonsuit issues, the trial court, in a letter opinion dated March 9, 1983, ruled that § 8.01-380 affords a plaintiff "an untrammeled right to take a timely nonsuit." Finding that the plaintiffs "did timely move and suffer a nonsuit in this action," the court said the "real question is what to do in view of the plaintiffs' disposition of the subject property and what is the effect of the nonsuit as to the defendant, United Virginia Bank, and its rights to possession of that property."

The trial court, noting that a detinue action is possessory in nature, said that Case had no right to seize or otherwise obtain the property in question "outside a motion for judgment in detinue"

accompanied by the statutory bond. The court ruled that because Case had nonsuited the action, the plaintiffs had "absolutely no right to possession of that property and must immediately return the same or its equivalent" to the Bank. The court further decided that because "it is impossible to return the original property and [Case's] offer to supply the defendants with comparable property is both impractical and unwise, this Court has no choice but to enter a judgment [in favor of both defendants] against the plaintiffs in the amount of $187,537.50."

We awarded Case this appeal from the order entered on this ruling. Trent objected to the order upon the ground that the judgment was inadequate in amount.

■ There is no issue that Case exercised its statutory nonsuit privilege in a timely manner and that the trial court was required to grant the plaintiffs' motion for a voluntary nonsuit. Case contends, however, that the trial court improperly entered a final money judgment as a part of the order of nonsuit. Relying on *Mallory* v. *Taylor*, 90 Va. 348, 18 S.E. 438 (1893), and *Gemmell* v. *Svea Fire and Life Ins. Co.*, 166 Va. 95, 184 S.E. 457 (1936), Case says this Court "has long recognized that a nonsuit cannot give rise to a final judgment."

The foregoing cases are inapposite and are not authority for the proposition that Case espouses. In *Mallory*, the Court merely held that an order of nonsuit was not a final judgment for purposes of appeal. In *Gemmell*, the Court decided that an order of nonsuit could not be the basis for a plea of res judicata, where the nonsuit was taken in a *de novo* circuit court hearing on appeal after a judgment had been entered in the case in the court not of record.

The issue presently before the Court is one of first impression in Virginia. Many other jurisdictions have confronted the problem, however, and we adopt the rule applied by a majority of those jurisdictions and implicitly followed by the trial court in this case. Most courts have recognized that the consequence of a voluntary dismissal of a detinue or similar action is that the defendant is entitled, without bringing independent proceedings, to the return of the property seized or its value. Annot., 24 A.L.R.3d 768, 771, 773. For example, in *Burnham* v. *MacWhinnie*, 350 Mass. 17, 213 N.E.2d 385 (1965), Burnham took possession of a truck in an action of replevin and then, exercising a statutory right, filed a motion to discontinue. He refused to disclose the location of the truck or to participate in a hearing. The trial court entered judgment for

return of the truck and assessed damages in favor of the defendant. In affirming the judgment, the Supreme Judicial Court of Massachusetts said that "one suing out a writ of replevin cannot obtain possession of the disputed personal property and then drop the litigation." *Id.* at 19, 213 N.E.2d at 386.

In *Schoolhouse Educational Aids, Inc.* v. *Haag*, 699 P.2d 1318 (Ariz. App. 1985), the court stated that a plaintiff, who seized property by a writ of replevin, cannot escape liability to the defendant by voluntarily dismissing his action. "By failure to prosecute, plaintiff should not deprive defendant of his right to establish title and right to possession and obtain a judgment for return of the property or its value and damages for the taking and withholding of the property." *Id.* at 1320. This rule makes "good sense," according to the Arizona court, because otherwise "a plaintiff under cover of legal process by use of the writ of replevin could perpetrate a fraud on the law and be allowed to keep the property taken from the possession of the defendant at the beginning of the suit without proving the allegations of his complaint." *Id.* at 1321. *See also Household Finance Corp.* v. *Pugmire Lincoln-Mercury, Inc.*, 123 Ga. App. 428, 181 S.E.2d 292 (1971); *Stewart* v. *Hasty*, 77 Ga. App. 524, 48 S.E.2d 757 (1948); *Epps* v. *Miller*, 7 N.C. App. 656, 173 S.E.2d 558 (1970).

■ The foregoing rule is particularly appropriate to the circumstances of this case, viewed against the background of Virginia's detinue statutes. The right of possession given to a detinue plaintiff under our statutory scheme contemplates retention of the seized property within the jurisdiction of the trial court until the substantive rights of the parties are finally determined. For example, the bond required of the plaintiff by Code § 8.01-115 must provide for redelivery of "the property so seized to the defendant" if the right to possession "shall be adjudged against the plaintiff." The bond filed in this case so provided.

■ Moreover, Code § 8.01-116 establishes criteria for return of the property to the defendant pending the litigation. Return may be had "at any time" after the plaintiff has seized the property if the defendant executes the appropriate bond. Also, Code § 8.01-121 provides that, upon entry of final judgment in the action, the trial court "shall dispose of the property or proceeds according to the rights of those entitled."

■ Compliance with these statutes would be frustrated and, in many cases, rendered impossible if the plaintiff with impunity

could place the seized property beyond the jurisdiction of the trial court before the rights of the parties have been determined. Therefore, where, as here, the plaintiff, after seizing the property under authority of statute and placing it beyond the jurisdiction of the court, decides to manipulate the statutory scheme by exercising the privilege of nonsuit, the detinue statutes contemplate entry of a specific judgment in the detinue proceedings against the plaintiff for the value of the property. Otherwise, under the circumstances of this case, a defendant would have to institute a separate proceeding, carry the burden of establishing rights to the property, and, if successful, attempt collection of the value of the property that was initially seized from its possession. Accordingly, we hold the trial court did not err in entering a judgment against the plaintiffs in the course of granting the nonsuit.

■ Case argues, alternatively, that even if the trial court correctly awarded a judgment in this proceeding, the amount of the award was unsupported by evidence. The dollar value of the judgment equals the sum stated in the affidavit filed by Case with the motion for judgment. Case notes the trial judge stated in the letter opinion that "the only evidence of the property's worth is that set forth in the affidavit accompanying the bond." According to Case, this approach ignores all the evidence adduced at the January 1983 hearing which demonstrated without contradiction that two pieces of equipment listed on the affidavit of a total value approximating $19,000 were not seized and that the value of parts and supplies was overstated from $13,000 to $15,000. We agree with Case.

During the January hearing, substantial but inconclusive evidence on valuation was presented by the plaintiffs. Some pieces of equipment seized were new, while other items were used. Testimony indicated that the amounts set forth in the affidavit were based upon the sums owed by Trent on the equipment rather than the wholesale or retail value. At one point during the hearing, the trial judge stated he was attempting to determine "true value" of the items as opposed to "retail value." At the conclusion of the hearing, the judge said the issue of damages would "necessitate another hearing." Of course, at that stage of the proceeding the court had no reason to anticipate Case would move two days later for a nonsuit. Nevertheless, we hold the trial court erred in relying exclusively on the affidavit in fixing the amount of the judgment when it was clear that the evidence at the hearing did not support

the amount awarded. Before fixing the amount of the final judgment, the court should have held a further hearing on the damage issue. At that hearing, additional relevant evidence on the issue of damages should have been received from all parties and the respective parties should have been allowed to prove with reasonable certainty the worth of the property seized by Case.*

Finally, Case argues that in no event should a judgment in favor of Trent be entered in this proceeding. Case contends the evidence showed that Trent had "floor-planned" all his Case equipment through Case and that Case had a valid security interest in the items. According to Case, Trent was heavily in debt to Case and Trent could not arrange to obtain release of any Case equipment that the Bank had "frozen." According to Case, "Trent was deprived of nothing and could suffer no damages."

Because the action was nonsuited before Trent had an opportunity to present evidence, the record is inadequate to enable us to decide whether Trent has been damaged by Case's conduct. The proceeding will be remanded and that issue must be determined upon retrial.

Consequently, the order appealed from will be reversed and the proceeding will be remanded for a new trial limited to the issue of damages, if any, suffered by either or both defendants. When the trial court reaches that determination, a new order will be entered granting the plaintiffs' motion for nonsuit and entering judgment against the plaintiffs in the amount of the damages suffered by either or both defendants.

*Reversed and remanded.*

---

\* There is no merit to cross motions to dismiss on the ground of mootness filed by the parties just before oral argument of this appeal. These motions stem from a suit by Case against the Bank and Trent arising from this controversy and now pending in the United States District Court for the Western District of Virginia.